### Ruel Adams *vs.* Marcus D. Crooks & others.

Putting up and establishing bounds of existing school districts by a town is not a districting anew, within the meaning of *Sts.* 1849, *c.* 206, and 1851, *c.* 303.

A warrant for a town meeting contained this article: " To see if the town will vote to continue their several school districts as now divided, or act or do anything relative to the same." At that meeting, a petition was presented to the town by inhabitants of district No. 2, praying for a division of that district into two districts, in the mode described in the petition, to be numbered 2 and 9; and the town voted " that the petition of school district No. 2 be granted, and to divide the district," and " that the selectmen be instructed to establish the line, and place bounds in the division of district No. 2, and designate the numbers of the districts." The warrant for a subsequent meeting contained these articles: " To hear the report of the selectmen respecting dividing school district No. 2, and designating the numbers, and act thereon: " " To see if the town will vote to annex school district No. 9 to school district No. 2 in said town, or do or act anything relating thereto, and confirming the limits of said district, if united, the same as they were prior to " the former meeting. Under this warrant, the town, after hearing the report of the selectmen read, (which described by monuments a line traversing the old district No. 2 from east to west, and reported " that the north district shall be No. 2, and the south district No. 9,") voted to accept the report; and the record of that meeting recited it at length. *Held*, that the two new districts were legally established; although upon the records of the town, between the records of these two meetings, was recorded a report of the selectmen, describing the new districts with less precision.

Action of tort against the assessors and collector of Bellingham for collecting a tax of the plaintiff as an inhabitant of school district No. 9 in that town. The question whether that school district was legally established was submitted to the decision of the court upon the following facts:

At a meeting of the town, held in April 1852, under this article in the warrant, " To see what action the town will take in regard to the boundary lines of the several school districts in said town, or act or do anything thereon," the town " voted to choose a committee of one in each school district in said town to put up the bounds for said districts according to law ," and chose certain persons to be that committee. At another meeting held in November 1852, under this article, " To hear the report of the committee on the boundaries of the school districts in said town, or act or do anything thereon," it was voted to accept " the report of the committee that was chosen at April

meeting last to put up and establish bounds and lines of the several school districts."

In the warrant for a town meeting held on the 5th of March 1855, the seventh article was thus : " To see if the town will vote to continue their several school districts as now divided, or act or do anything relative to the same." At that meeting a petition to the town was presented by legal voters and citizens of school district No. 2, praying for the division of that district into two districts, " bounded nearly as follows : Beginning at some point on the town line, nearly opposite to where Ellery Allen, of Franklin, now resides, and running in a straight line to the county road, to the spot where schoolhouse No. 2 was burnt down, and from thence to some point on the line of the town between the house of John Drake and the Bellingham poor house ; leaving all the buildings on the northerly and north-westerly side of said line in the northerly district, and all on the southerly and easterly side of said line in the southerly district ; one of said districts to be called No. 2, and the other No. 9." And the town voted " that the petition of school district No. 2 be granted, and to divide the district ; " and also, " that the selectmen be instructed to establish the line, and place bounds in the division of district No. 2, and designate the numbers of the districts ; " and " to dismiss the seventh article from the warrant."

In May 1855 a town meeting was called, by a warrant containing these articles : "ART. 2. To hear the report of the selectmen respecting dividing school district No. 2, and designating the numbers, and act thereon.

"ART. 3. To see if the town will vote to annex school district No. 9 to school district No. 2 in said town, or do or act anything relating thereto, and confirming the limits of said district, if united, the same as they were prior to the fourth day of March last past."

The record of the meeting in May 1855 contains the following : " Heard read the report of the selectmen, in dividing school district No. 2, establishing bounds in same, and designating the numbers of said districts ; and, on motion of Noah J. Arnold

voted to accept the said report. Said report is as follows, on record: 'Bellingham, March 21st 1855. The following is the report of the undersigned, selectmen of the town of Bellingham, in dividing school district No. 2, establishing the bounds and designating the numbers of said districts, according to a vote of said town, passed March 6th 1855. Having attended to said duties, we beg leave to make the following report, viz: Beginning by placing a bound on the Bellingham and Franklin line, nearly opposite the house of Ellery Allen, in said Franklin, thence running in a northwesterly direction to a stake in the centre of the spot where the old schoolhouse stood in said district, thence in a westerly direction to a stone monument standing on the line of the road leading from the house of John Drake to the Bellingham poor house.. And we further report, that the north district shall be No. 2, and the south district No. 9. All of which is respectfully submitted.

Nathan Burr, &#125;
Martin Rockwood, &#125; Selectmen of Bellingham.'
Stilman Rand, &#125;

" On motion of Captain Asa Pickering, it was voted to dismiss the third article from the warrant."

Between the records of the meetings of March 1855 and May 1855 the following report is recorded in the town records: " Bellingham, March 21, 1855. This is to certify that we have this day been, agreeably to a vote of the town, taken on the sixth day of March instant, and run a division line, and established bounds in school district No. 2, as follows, viz: By placing a bound on the Bellingham and Franklin line, nearly opposite to the house of Ellery Allen, in said Franklin, thence running northwesterly to the spot where the old schoolhouse used to stand, thence in a westerly direction to the town road leading from the house of John Drake to the Bellingham poor house; and we further direct, by authority of the aforesaid vote, the north district shall be called No. 2, and the south district No. 9

Nathan Burr, &#125;
Stilman Rand, &#125; Selectmen of Bellingham."
Martin Rockwood, Jr., &#125;

35 *

*E. Washburn & W. Colburn,* for the plaintiff.

*E. Wilkinson & P. P. Todd,* for the defendants.

THOMAS, J. This case is before us upon an agreed statement of facts. The facts being understood, and in their order, the result is not difficult. The tax was rightfully assessed and collected if district No. 9 was a legal district. This question has raised, so far as the power to lay this tax upon the plaintiff is concerned, two others : whether the town was legally districted in 1852 ; and the legality of the proceedings in 1855 in the creation of the new districts.

1. If the town was districted in 1852, it is said it could not be districted anew within ten years, so as to tax the plaintiff for the erection of the schoolhouse in the new district. *Sts.* 1849, *c.* 206 ; 1851, *c.* 303. Whether there are any facts agreed which would bring the tax of the plaintiff within the provisions of these statutes, we need not stop to inquire ; for it is clear that the town was not districted anew in 1852. There is nothing in the proceedings of the town in 1852 to change the school districts then existing. The whole effect of the action of the town was to put up bounds to the districts before created. This point is not pressed in the argument.

2. The other question is, whether district No. 9 was legally established by the proceedings of 1855.

The article in the warrant for the March meeting was " to see if the town will vote to continue their several school districts as now divided, or act or do anything relative to the same." This sufficiently describes the subject matter to be acted upon. A petition was presented to the town by the inhabitants of district No. 2, praying for a division of district No. 2, and the formation of two new districts, in the mode in said petition set forth. It was voted, " that the petition of district No. 2 be granted, and to divide the district." The selectmen were instructed " to establish the line, and place bounds in the division of district No. 2, and to designate the numbers of the districts." These votes being read in connection with the petition to which they refer, their meaning and purpose are quite plain.

In the warrant for the meeting in May, the second article was

" to hear the report of the selectmen respecting dividing school district No. 2, and designating the numbers, and act thereon." At the May meeting, the selectmen made their report of the division of district No. 2, establishing the bounds and designating the numbers of the new districts formed out of it. That report was accepted by the vote of the town. It divides, by a plainly described line, a district, whose limits were fixed, into two parts; designating the part north of the line described as district No. 2, and the part south of the line as district No. 9. The town then voted to dismiss from the warrant the third article, which looked to a reunion of the districts which the town had, at the March meeting, directed to be made. We find no serious difficulty in understanding these proceedings, or the conclusion to which they lead—the legal constitution of districts No. 2 and No. 9.

The action of the selectmen, in entering upon the books of the town, between the meetings in March and May, a division of district No. 2, was a wholly void act, and does not affect the result.                      *Judgment for the defendants.*